# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| COREY S. MOSLEY, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | No. 1:16-cv-01343-WTL-TAB |
| STANLEY KNIGHT, | ) | |
| Respondent. | ) | |

## Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment

The petition of Corey Mosley for a writ of habeas corpus challenges a prison disciplinary proceeding, IYC 16-03-0139, in which he was found guilty of violating a state law (stalking). For the reasons explained in this entry, Mr. Mosley's habeas petition must be **denied.**

## I. Overview

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On March 17, 2016, Investigator Gaskin issued a Report of Conduct charging Mr. Mosley with violating a state law (stalking) in violation of Class A-100. Dkt. 12-1. The Report of Conduct states:

> On the above date and time offender Corey Mosley left work and was in the office of Mrs. Phillips-Coleman during count. During this investigation Mosley admitted to asking Mrs. Phillips-Coleman inappropriate questions. He was instructed to have no contact with Mrs. Phillips-Coleman. On 2-22-2016 Mosley was seen in the school standing in the hallway waiting on Mrs. Phillips-Coleman and walk[ing] with her out of the school. On 2-24-2016, offender Mosley sent a message to Mrs. Phillips-Coleman through another offender. On 3-4-2016 Mosley sent a letter saying "There is not a legitimate 'no contact' against Alison and I, if they don't want us to have contact then please transfer me." On 3-14-2016 Mrs. Phillips-Coleman [reported] "that since the windows were opened up in RHU last week, Offender Mosley has taken to yelling at me out the window." She went on to say last week offender Mosley sent a message to Mrs. Phillips-Coleman through two other offenders. Offender Mosley's action fits the state statute for Stalking.    See Report of Investigation

Dkt. 12-1.

The accompanying Report of Investigation states:

> On February 5, 2016 I received a call from a staff member complaining that offender Mosley left his work site at PEN products claiming that he was sick with a severe cold or pneumonia. Staff allowed the inmate to return back to his housing unit under the impression that offender Mosley was going to medical to see about his alleged health issues. At approximately 11:50 AM offender Mosley was in the mental health counselor's office (Mrs. Phillips-Coleman) sitting approximately 6 inches away from her bent over her left leg reading a fashion magazine. Mosley was escorted to RHU for further review. [During] [a]n interview with the female counselor, she admitted that offender Mosley has made some inappropriate comments towards her and asked questions that were in her opinion out of bounds. Mrs. Phillips-Coleman went on to say after speaking with inmate Mosley about his inappropriate behavior his job was changed to PEN products. Mrs. Phillips-Coleman also admitted that Mosley was giving her fashion tips on shoes that he thought would look good for her to purchase. Offender Mosley was

interviewed by this office and instructed not to have any further contact with Mrs. Phillips-Coleman during this investigation and that he would be recommended for placement in the therapeutic community for his drug related issues he claims that he was having. On February 22, 2016 a few days after the conversation with this investigator, offender Mosley was seen in the school standing in the blue hallway attempting to hide his face from custody staff while he waited on the mental health counselor Mrs. Phillips-Coleman to leave her classroom. Mosley was observed walking and attempting to hold a conversation with Mrs. Phillips-Coleman. Mosley was escorted to segregation for investigation for the charge of stalking. Mrs. Phillips-Coleman advised this office that the day after offender Mosley was placed in segregation he attempted to contact her through an offender worker assigned to clean in the segregation unit. This office has received several complaints from inmates stating that offender Mosley has attempted to recruit them to send messages to the female counselor on his behalf. With the latest change in weather the storm windows from segregation were removed for better airflow, offender Mosley took this opportunity to yell and try to contact the [sic] Mrs. Phillips-Coleman as she passed by that dorm walking to her office on a daily basis. Custody staff attempted to correct this problem by relocating this offender to a different cell away from the windows by the sidewalk to Mrs. Phillips-Coleman office. The initial report was that offender Mosley had refused to move when he found out that he could no longer communicate or see Mrs. Phillips-Coleman. Offender Mosley's action fits the state statute for Stalking a level 6 felony.

Dkt. 12-2.

Mr. Mosley was notified of the charge on April 4, 2016, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). Dkt. 12-3. He pled not guilty. The Screening Officer noted that Mr. Mosley requested a statement from Mrs. Phillips-Coleman asking if she called him out on February 22, 2016 to attend group. He did not request any physical evidence. *Id.* Mrs. Phillips-Coleman's statement was: "Yes. He was on call-out letter for group & I informed dorm officers on this date that he was allowed to attend group." Dkt. 12-4.

The Hearing Officer conducted a disciplinary hearing on April 5, 2016. Dkt. 12-8. The Hearing Officer noted Mr. Mosley's statement, "This guy has a personal vendetta against me. I

did not stalk her. She has written people up for stalking or PREA before. Why wouldn't she write this up?" *Id.* Relying on the staff reports, statement of the offender, the evidence from the witnesses, and the IA Investigation Report, the Hearing Officer determined that Mr. Mosley had violated Code A-100. *Id.*

The sanctions imposed included an inter-facility transfer, 45 days of phone, commissary, and JPay restriction, 180 days of disciplinary segregation, the deprivation of 180 days of earned credit time, and the demotion from credit class I to III. *Id.* The Hearing Officer imposed the sanctions because of the seriousness, frequency, and nature of the offense, the offender's attitude and demeanor during the hearing, the degree to which the violation disrupted or endangered the security of the facility, and the likelihood of the sanctions having a corrective effect on the offender's future behavior.

Mr. Mosley's appeals were denied. This habeas action followed.

### III. Analysis

Mr. Mosley argues that his due process rights were violated during the disciplinary proceeding. His claims are construed as those he brought in his appeal, which are: 1) he was not given 24 hours' notice before the hearing; 2) he was denied evidence; and 3) there was insufficient evidence to support the guilty finding. Dkt. 1-1, pp. 4-5.

Mr. Mosley first contends that he was screened at 11:15 a.m. on April 4, 2016, and the hearing was conducted the next day at 8:36 a.m., a few hours shy of 24 hours. Due process requires 24 hours' notice of the charges brought against a petitioner "to enable him to marshal the facts and prepare a defense." *Wolff,* 418 U.S. at 564. At least this brief period of time after the notice should be allowed to give the petitioner time to prepare for the hearing. *Id.* Mr. Mosley does not allege that he did not have an adequate opportunity to prepare for the hearing. Lacking

any showing of prejudice, this claim does not warrant relief. *Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011) (due process violations are harmless if no prejudice is suffered). This claim is denied.

Mr. Mosley next claims that he was "refused proper evidence presentation" by Officer Andrews, the screening officer. He alleges that he asked for multiple items to be addressed to his witness, but he was only allowed one question. He alleges that his request for the initial interview of Mrs. Phillips-Coleman recorded by an Internal Affairs investigator was improperly denied.

The Screening Report indicates that Mr. Mosley wanted to ask Mrs. Phillips-Coleman one question. Dkt. 12-3. That question was answered. Dkt. 12-4. Mr. Mosley has not identified what additional questions he wanted to have posed to his witness. Without alleging what potential evidence he was denied, Mr. Mosley cannot show that he was prejudiced by a denial of evidence. This claim is denied. *Jones,* 637 F.3d at 847 (petitioner's inability to present witness's testimony did not prejudice him so any conceivable error was harmless).

Mr. Mosley also alleges that he was not allowed to know what evidence was used against him because it was confidential and retained by Internal Affairs. Due process requires prison officials to "disclose all material exculpatory evidence" unless it "would unduly threaten institutional concerns." *Jones,* 637 F.3d at 847 (internal quotation omitted). The Court has reviewed *in camera* the confidential Internal Affairs report. Substantial parts of the confidential report have been disclosed to Mr. Mosley through the Report of Conduct and the Report of Investigation. The Court finds no exculpatory evidence that was not shared with Mr. Mosley. Accordingly, there was no due process error in not allowing Mr. Mosley access to the complete Internal Affairs file.

Mr. Mosley's final claim is a challenge to the sufficiency of the evidence. He alleges that all interactions between him and the female counselor, Mrs. Phillips-Coleman, were appropriate. He asserts that as a dorm rep of the S.N.A.P. unit, he was obligated to report to her more often than other offenders and that he never crossed the boundaries of his duties.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016). The "some evidence" evidentiary standard in this type of case is much more lenient than "beyond a reasonable doubt" or even "by a preponderance." *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (hearing officer in prison disciplinary case "need not show culpability beyond a reasonable doubt or credit exculpatory evidence."); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) ("In reviewing a decision for 'some evidence,' courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.") (internal quotation omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

"Stalk" under Indiana law is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code. § 35-45-10-1. The evidence includes Mr. Mosley leaving his work site under false pretenses to go to Mrs. Phillips-Coleman's office and being found sitting approximately six inches away from her bent over her leg and him admitting making inappropriate comments toward her. He was ordered not to have any more

contact with her but he later waited for her to leave a classroom while attempting to hide his face from officers, sent messages to her through other offenders, and yelled at her through a window on a daily basis. Although Mr. Mosley was told not to have contact with Mrs. Phillips-Coleman, he refused to stop and repeatedly went out of his way to attempt to have unwanted contact with her. His conduct was intentional, repeated, and would make a reasonable person feel at a minimum intimidated. The evidence is sufficient to support the charge.

Mr. Mosley was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Mosley's due process rights.

### IV.  Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Mosley's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  4/25/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel

COREY S. MOSLEY #223281
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 W. Reformatory Road
Pendleton, IN 46064